IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| BELK, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Civil Action No. 3:22-CV-00428-MOC-DSC |
| NIR PATEL, TIM MAY, and GAMESTOP CORP., | ) ) ) |
| Defendants. | ) ) ) |

**DEFENDANT'S BRIEF IN SUPPORT OF MOTIONS TO DISMISS**

**INTRODUCTION**

Belk, Inc. ("Belk") has sued GameStop Corp. ("GameStop") alleging jurisdictionally defective state-law causes of action. Accordingly, Belk's claims that GameStop tortiously interfered with Belk's contracts and engaged in unfair and deceptive trade practices should be dismissed for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

In its Complaint, Belk asserts that this Court has personal jurisdiction over GameStop without any individualized analysis. But the existence of personal jurisdiction must be analyzed separately with respect to each defendant. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980). As the Complaint itself concedes, GameStop is incorporated and has its principal place of business outside of North Carolina. And while GameStop has many retail storefronts in North Carolina, Belk's claims against GameStop have no "affiliation between the forum and the underlying controversy," *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 173 S. Ct. 1773, 1781 (2017). "When there is no such affiliation or connection, specific jurisdiction is lacking regardless

1

of the extent of a defendant's unconnected activities in the state." *Id.* Accordingly, this Court should dismiss Belk's claims against GameStop for lack of personal jurisdiction.

Belk's claims against GameStop should also be dismissed because they are not supported by well-pleaded facts. Cursory scrutiny of Belk's complaint reveals that it cast a broad net, trying to entangle GameStop in Belk's dispute with its former employees in an attempt to bully GameStop and prevent open, free trade in a competitive labor market. But this guilt-by-association approach to pleading cannot withstand scrutiny under Federal Rule of Civil Procedure 12(b)(6).[1]

## FACTUAL ALLEGATIONS

On August 22, 2022, Belk filed suit against GameStop and two of GameStop's officers for alleged violations of the Defend Trade Secrets Act and the North Carolina Trade Secrets Protection Act, unfair and deceptive trade practices, and breaches of contract, tortious interference with contract. Compl. ¶¶ 49-89. This Motion to Dismiss addresses only the claims levied against GameStop specifically. Compl. ¶¶ 78-89.

According to Belk, GameStop "intentionally and without justification induced" a GameStop officer to "breach the Nonsolicitation Covenant" he had with Belk, thereby injuring Belk and exposing it to "irreparabl[e] harm." Compl. ¶¶ 81-82. Additionally, Belk claims that GameStop "aid[ed] and abet[ed]" violations of Belk's Nonsolicitation Covenant, "thereby tortiously interfering with" Belk's contract with its former employee-turned-GameStop-officer. Compl. ¶ 86. As set forth below, Belk's if-we-can't-have-you-nobody-can arguments are both jurisdictionally defective and fail to state a claim for relief.

---

[1] GameStop's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is filed subject to GameStop's Motion to Dismiss for lack of personal jurisdiction. GameStop does not waive its challenge to personal jurisdiction or intend to litigate the merits of this dispute before resolving the jurisdictional issue, and the Court need not address GameStop's motion for failure to state a claim if it determines that it lacks personal jurisdiction.

2

## LEGAL STANDARDS

### I. Personal Jurisdiction

In deciding whether it has personal jurisdiction over a defendant, this Court must determine (1) whether the North Carolina long-arm statute confers personal jurisdiction and (2) whether the exercise of that statutory power will violate the due process clause of the U.S. Constitution. *CGen Latex & Chem. Corp. v. Phoenix Med. Tech.*, 765 F. Supp. 1246, 1248-49 (W.D.N.C. 1991). Because North Carolina's long-arm statute extends jurisdiction to the bounds of due process, it ultimately merges with the constitutional inquiry. *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997). Accordingly, courts may exercise personal jurisdiction "if the defendant has 'minimum contacts' with the forum, such that to require the defendant to defend its interest in the state 'does not offend traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945). Ultimately, to decide whether specific jurisdiction exists, courts must consider three elements: (1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citation omitted);

As to the first element, a defendant has availed itself of the privilege of conducting business in a state—and thus the benefits and protections of the state's laws—when the defendant "deliberately has engaged in significant activities within a state" or "has created continuing obligations between itself and residents of the forum" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985) (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 (1984)).

The second element requires a sufficient nexus between the forum and the underlying controversy, principally an activity or occurrence that takes place in the forum State. When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the state. *See Vishay Intertechnology, Inc. v. Delta Int'l Corp.*, 696 F.2d 1062, 1068 (4th Cir. 1982) ("In determining whether due process is satisfied, it is significant that the cause of action arises out of the defendant's contacts with the forum state.").

The third element—constitutional reasonableness—is comprised of a series of factors, including the burden appearing in a given forum would place on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive policies.

While a defendant must affirmatively raise a personal jurisdiction challenge, the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following a challenge. *Grayson v. Anderson*, 816 F.3d 262, 267 (2016). The plaintiff's burden in establishing jurisdiction varies according to the posture of the case and the evidence presented to the court. *Id.* at 268. When courts review only the parties' motion papers affidavits, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a *prima facie* showing of personal jurisdiction to survive the jurisdictional challenge. *Id.*

II. **Failure to State a Claim**

Federal Rule of Civil Procedure 12(b)(6) provides that a motion may be dismissed for failure to state a claim upon which relief can be granted. A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint without resolving contests of fact or the merits of a

4

claim. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992), *cert. denied*, 510 U.S. 828 (1993). Thus, the Rule 12(b)(6) inquiry is limited to determining if the allegations constitute "a short and plain statement of the claim showing the pleader is entitled to relief" pursuant to Federal Rule of Civil Procedure 8(a)(2). To survive a party's motion to dismiss, factual allegations in the complaint must be sufficient to "raise a right to relief above a speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Thus, a complaint will survive if it contains "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

For the purposes of a Rule 12(b)(6) analysis, a claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting Twombly, 550 U.S. at 556). The Court must draw all reasonable factual inferences in favor of the nonmovant. *Priority Auto Grp., Inc. v. Ford Motor Co.*, 757 F.3d 137, 139 (4th Cir. 2014). In a Rule 12(b)(6) analysis, the Court must separate facts from legal conclusions, as mere conclusions are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678. Importantly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* However, well-pleaded factual allegations are entitled to a presumption of truth, and the court should determine whether the allegations plausibly give rise to an entitlement to relief. *Id.* at 679.

## ARGUMENT

**I.      Belk's claims against GameStop should be dismissed for lack of personal jurisdiction pursuant to Rule 12(b)(2).**

Here, Belk has failed to satisfy its burden to make a *prima facie* showing of personal jurisdiction. In its Complaint, Belk alleges simply that this Court has "subject matter jurisdiction" and "supplemental jurisdiction" over its claims. Compl. ¶ 11. Conspicuously missing from Belk's

5

Complaint is an attempt to establish *personal* jurisdiction over GameStop. *See* FED. R. CIV. P. 8(a)(1) ("A pleading that states a claim for relief must contain a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support."). This was no mere oversight. Belk has not alleged this Court's personal jurisdiction over GameStop because it cannot be established. And notwithstanding Belk's failure to argue this Court's personal jurisdiction over GameStop, a review of the relevant caselaw makes clear that this Court should dismiss this case pursuant to FED. R. CIV. P. 12(b)(2).

### A. GameStop is not subject to this Court's general jurisdiction.

For a corporation, the "paradigm forum for the exercise of general jurisdiction is . . . one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). A corporation's "home" generally refers to its domicile, place of incorporation, and principal place of business." *Id.*

As Belk admits in its Complaint, GameStop is incorporated in Delaware and has a principal place of business in Texas. Further, as the Fourth Circuit recently recognized, "contacts [that] certainly qualify as systematic and continuous . . . are not substantial enough to render" a large corporation "essentially at home in the forum state." *Fidrych v. Marriott International*, 952 F.3d 124, 134 (4th Cir. 2020) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014)). There is nothing about GameStop's relationship with North Carolina "that would distinguish [it] . . . from its relationship with any of the other states where it does business but where it is not incorporated or headquartered." *Id.* To hold otherwise is to subject GameStop "to general jurisdiction in every state" where its stores are located. *Id.* Accordingly, GameStop's contacts do not render it "at home" in North Carolina, and this Court does not have contact-based general jurisdiction as a result.

## B. GameStop is not subject to this Court's specific jurisdiction.

This Court also lacks specific personal jurisdiction over GameStop. As discussed above, federal courts employ a three-prong test to determine whether the exercise of specific jurisdiction over a nonresident comports with due process: (1) whether the defendant purposefully directed its activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is constitutionally reasonable and fair. GameStop does not argue that it has never directed certain activities at North Carolina residents, as evidenced by GameStop's retail stores throughout the state. However, prongs two and three cut decisively in GameStop's favor.

Certainly no nexus exists between GameStop's activities in North Carolina—operating video game retail stores—and Belk's tortious interference with contract and deceptive trade practices claims. Accordingly, Belk seemingly attempts to draw a line from the communication of GameStop corporate officers to Defendants May and other unnamed Belk employees as proof of GameStop's involvement in wrongdoing. But Belk's own allegations—examined through the lens of personal jurisdiction jurisprudent—betray its attempt to implicate GameStop.

- Belk further seeks to enjoin GameStop, which is also Patel's current employer, from tortiously interfering with Patel's nonsolicitation obligations and from possessing, using, or disclosing Belk's confidential information. Compl. ¶ 1.

- Indeed, some of GameStop's most senior management personnel, including its CEO and Chairman, aided and abetted Patel's wrongful recruitment efforts, by directly contacting and recruiting senior Belk employees on Patel's behalf. GameStop's conduct constitutes tortious interference with Patel's contracts with Belk, as well as unfair and deceptive trade practices. Compl. ¶ 3.

- GameStop wrongfully induced, approved, and benefitted from Patel's breaches of the Nonsolicitation Covenant . . . . GameStop nevertheless encouraged and assisted Patel in recruiting May and directly participated in crafting the details of May's offer of employment. Compl. ¶ 30.

7

- GameStop, including through its CEO Matthew Furlong, Chairman Ryan Cohen, Board member Alan Attal, and VP of Human Resources Wes Burke, intentionally and without justification induced Patel to breach the Nonsolicitation Covenant, including by, among such other acts as discovery may reveal, facilitating and encouraging Patel's breaches and soliciting employees on Patel's behalf. GameStop did so in order to wrongfully secure access to Belk's talent pool, in which Belk has invested significant time and resources training and developing. Compl. ¶¶ 79–82.

Belk does not allege that the communications from GameStop "relate directly to . . . communications sent into North Carolina." *Refinity, Inc. v. Jones*, No. 3:20-CV-00422-KDB-DSC, 2022 WL 332782 at *5. In fact, Belk does not even plead that any alleged communications were directed into North Carolina. From the Complaint it is clear that May, for example, resides in Virginia, meaning communications directed to him would not result in this Court having jurisdiction. As discussed more extensively in its motion to dismiss under Rule 12(b)(6), there are also not any allegations at all that GameStop engaged in any tortious conduct related to Patel, much less any that would give rise to jurisdiction in North Carolina.

Because Belk cannot meet its burden on the second prong of the test for specific personal jurisdiction, this Court need not address whether exercising personal jurisdiction is unreasonable. But in any event, a failure of the second prong confirms that maintenance of this action over GameStop would "offend traditional notions of fair play and substantial justice" because GameStop could not reasonably have anticipated being haled into this Court to defend this lawsuit. *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945). The crux of Belk's case is that GameStop acted in concert with its employee—Patel—to recruit Belk's employees. Under Belk's theory, there was something tortious about its interactions with Patel. But even assuming that is true, it cannot follow that GameStop's communications with its own employee could confer jurisdiction in the employee's state of residence. That would undermine decades of caselaw, because it would effectively mean a corporation could be haled into any jurisdiction where it has

8

Case 3:22-cv-00428-MOC-DSC   Document 30   Filed 10/14/22   Page 8 of 13

employees any time the employee is individually sued in the case. That does not comport with traditional notions of fair play or substantial justice.

## II. Belk's claims for tortious interference of or unfair and deceptive trade practices against GameStop should be dismissed for failure to state a claim pursuant to Rule 12(b)(6).

Belk attempts to plead two claims under North Carolina law against GameStop: (1) tortious interference of a contract and (2) unfair and deceptive trade practices. For a host of reasons, those claims lack merit and warrant dismissal.

To begin, Belk's complaint fails to outline any well-pleaded factual allegations relevant to its claims *against GameStop*. The allegations instead focus on May's and Patel's agreements and *their* purported breaches. Relevant to GameStop, Belk alleges GameStop is Patel's current employer, so "upon information and belief," Belk jumps to the conclusion that GameStop was aware "or had reason to know" of Patel's nonsoliciation obligation to Belk," when GameStop hired Patel as COO. **Compl ¶¶ 1, 3, 30, 79–82.** From there, Belk maintains GameStop "encouraged and assisted"[2] Patel's recruitment efforts "by directly contacting and recruiting senior Belk employees" and "soliciting employees on Patel's behalf." **Compl. ¶ 3, 30, 79-82.** And according to Belk, GameStop did so "intentionally and without justification" and "to wrongfully secure access to Belk's talent pool." **Compl ¶ 82.** . At best, these limited mentions of GameStop present legal conclusions, having no bearing on the plausibility of Belk's claims against GameStop. *See Iqbal*, 556 U.S. at 681 (2009) (holding that "bare assertions," as distinguished from well-pleaded factual allegations, are "not entitled to be assumed true"). Moreover, each conclusory allegation is about

---

[2] Belk recasts these hollow verbs in a variety of way: "actively assisted and encouraged" "aided and abetted," "induced, approved, and benefited from," "encourage and assisted," "approved and ratified," and "facilitate[ed] and encourage[d]." All describe the same alleged action and restate the same legal conclusion.

9

GameStop's recruitment of Belk employees, not about interfering with Patel's alleged contractual obligations.

Remaining is only one paragraph relevant to GameStop. Its board members (and Furlong) recruited May, and GameStop's VP of Human Resources finalized the details of his offer. **Compl. ¶ 30**. But GameStop's recruiting and offering jobs to potential employees in a tight labor market is commonplace competition for talent—a far cry from Belk's accusations of tortious conduct. Belk's failure to accompany its legal conclusion with plausible factual allegations dooms both its tortious-interference and unfair-and-deceptive-trade-practices claims.

***First,*** to plead a tortious-interference claim, a plaintiff must plausibly allege that (1) a contract existed between the plaintiff and a third party that gave the plaintiff a contractual right; (2) the defendant had knowledge of the contract; (3) the defendant intentionally induced the third party not to perform under the contract; (4) in doing so, the defendant acted without justification; and (5) the defendant's acts caused plaintiff actual damage. *Peoples Sec. Life Ins. Co. v. Hooks*, 367 S.E.2d 647, 649–50 (N.C. 1988). Here, Belk fails to plead any factual allegations supporting the second, third, and fourth elements of the its tortious-interference claim.

For knowledge, plaintiffs cannot simply allege defendant's "knowledge of the contract[]" even under the less-burdensome pleading standard in North Carolina state courts. *Krawiec v. Manly*, 811 S.E.2d 542, 546 (N.C. 2018); *see also Childress v. Abeles*, 84 S.E.2d 176, 182 (N.C. 1954) (explaining that a defendant "has knowledge of the contract . . . if he knows the facts which give rise to the plaintiff's contractual right against the third person."). But that is exactly what Belk attempts here. Belk alleges that "upon information and belief, GameStop was aware of Patel's nonsolicitation obligations to Belk" or, worse yet, "had reason to know" of the obligations. (Dkt. #1 ¶¶ 3, 30). *Charah LLC v. Sequoia Servs. LLC*, No. 18-CVS-4815, 2019 WL 1119076, at *5

10

(N.C. Bus. Ct. Mar. 11, 2019) (finding general allegations that defendant knew of contract's existence insufficient to establish a tortious-interference claim, but allegation that defendant was provided with a written message informing it of the existence of the contract would suffice). Belk's belief of GameStop's knowledge of the contract (or alternatively, that Gamestop "had reason know") fall short of the "knowledge of the contract" required to state a claim for tortious interference.

Belk, likewise, failed to allege facts supporting an inference of inducement *by GameStop*. Inducement requires "active persuasion, request, or petition." *Inland Am. Winston Hotels, Inc. v. Crockett*, 712 S.E.2d 366, 370 (N.C. App. 2011). If anything, Belk alleges *Patel induced GameStop*—that is GameStop employees allegedly "contacted and solicited senior Belk employees *on Patel's behalf or at his behest*." (Dkt. #6 at 3) (emphasis added). In short, Belk complains that GameStop tried to recruit Belk employees—which GameStop is allowed to do— and ***not*** that GameStop induced Patel to violate his purported nonsolicitation obligation.

As for GameStop's justification, Belk alleges simply that GameStop was "without justification." To establish the element of acting without justification, a plaintiff must show "no motive for interference other than malice." *Area Landscaping L.L.C. v. Glaxo-Wellcome Inc.*, 586 S.E.2d 507, 510 (N.C. App. 2003) (quoting *Filmar Racing Inc. v. Stewart*, 541 S.E.2d 733, 738 (N.C. App. 2001)). The North Carolina Supreme Court has consistently held that "the privilege to interfere is conditional or qualified; that is, it is lost if exercised for a wrong purpose. In general, a wrong purpose exists where the act is done other than as a reasonable and *bona fide* attempt to protect the interest of the defendant which is involved." *Hooks*, 367 S.E.2d at 650 (cleaned up). "[C]ompetition in business" is a reasonable, bona fide business purpose for interfering with an agreement. *Id.* (citing *Childress*, 84 S.E.2d at 182).

11

Here, Belk suggests that GameStop motivation was to "secure access to Belk's talent pool"—that is, hire people. *See* (Dkt. #1 ¶ 81). And as the North Carolina Supreme Court has explained, the "free enterprise system demands that competing employers be allowed to vie for the services of the best and brightest employees without fear of subsequent litigation for tortious interference." *Hooks*, 367 S.E.2d at 651 (quotation omitted). So, in fact, Belk pleaded GameStop's a legitimate business interest in the recruitment of qualified and capable employees. According to Belk, even assuming interference, GameStop acted for a legitimate business interest and without malice. For these reasons, Belk's tortious-interference claim fails as a matter of law.

***Second,*** "To prevail on a claim of unfair and deceptive trade practice[s] a plaintiff must show (1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff or to his business." *Hatteras/Cabo Yachts, LLC v. M/Y EPIC*, 423 F. Supp. 3d 181, 191 (E.D.N.C. 2019). Here, Belk premises its claim against GameStop for unfair and deceptive trade practices on the same conclusory allegations underlying its claim for tortious interference with contract. (Dkt. #1 ¶ 86); (Dkt. #6 at 21). Belk's complaint fails to identify *what* act, practice or method of competition *by Gamestop* is being challenged, much less how that unidentified act proximately caused Belk some unnamed injury. Belk's unfair-and-deceptive-trade-practices claim lacks any factual support. For these reasons, this claim also fails as a matter of law.

## CONCLUSION

For the reasons stated above, Defendant GameStop respectfully requests that the Court dismiss Belk's claims against it.

This the 14th day of October, 2022.

Respectfully submitted,

**Robinson Bradshaw & Hinson, P.A.**

/s/ Adam K. Doerr
Adam K. Doerr
N.C. Bar No. 37807
adoerr@rbh.com

101 North Tryon Street, Suite 1900
Charlotte, NC 28246
Telephone: (704) 377-8114

**Gibson, Dunn & Crutcher LLP**

John T. Cox III *(pro hac vice to be filed)*
Tex. Bar No. 24003722
TCox@gibsondunn.com

John S. Adams *(pro hac vice to be filed)*
Tex. Bar No. 24097277
jsadams@gibsondunn.com

Al Suarez *(pro hac vice to be filed)*
Tex. Bar No. 24113094
ASuarez@gibsondunn.com

2001 Ross Avenue, Suite 2100
Dallas, Texas 75201-2911
Telephone: (214) 698-3100

*Counsel for Defendant GameStop Corp..*